UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| C&S MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | NO. 1:08-CV-29PS |
| SUPERIOR CANOPY CORPORATION, | ) | |
| DANNY GREENLAND, CATHY | ) | |
| GREENLAND, BRIAN E. HAYES | ) | |
| (individually and as Trustee Under Trust | ) | |
| Agreement Dated December 1, 1995), | ) | |
| ROBIN HAYES, BRICE E. HAYES, U.S. | ) | |
| BANCORP EQUIPMENT FINANCE, | ) | |
| INC., WELLS FARGO BANK, N.A., | ) | |
| STAR FINANCIAL BANK, AND SKY | ) | |
| BANK, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| DANNY GREENLAND, CATHY | ) | |
| GREENLAND, BRIAN E. HAYES | ) | |
| (INDIVIDUALLY AND AS TRUSTEE | ) | |
| UNDER TRUST AGREEMENTS | ) | |
| DATED DECEMBER 1, 1995), ROBIN | ) | |
| HAYES, AND BRICE E. HAYES, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE STAMPER, ELOISE COMBS | ) | |
| (INDIVIDUALLY AND AS TRUSTEE | ) | |
| OF KELLY G. COMBS IRREVOCABLE | ) | |
| TRUST), AND RANSOM E. DOTSON, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**OPINION AND ORDER**

Before the Court are motions to dismiss a Third Party Complaint and Counterclaims alleging a bevy of theories but most of which relate to allegations of fraud in the procurement of certain mortgages and guaranties. The facts are dense, but here's what happened according to the third party complaint and counterclaim which I accept as true at this point.

Superior Canopy Corp. was formed in 1997 with ownership divided equally between Brice Hayes and Ralph Lingo. *See* Third Party Complaint [DE 27], ¶ 15. Over the next few years, several shares of the company were sold or transferred to members of C&S Management, LLC including George Stamper, Ransom E. Dotson, and Eloise Combs, as well as the Combs Trust. *Id.*, ¶¶ 15-21. In August 2001 a Stock Purchase and Sale Agreement ("Sale Agreement") was executed which called for the sale of an additional 100 shares from Lingo to C&S; another part of the Sale Agreement called for Brice Hayes to transfer one share of Superior to C&S because of the "indirect benefit" he would receive from C&S's overall control of Superior. *Id.*, ¶ 20. What exactly that means is unclear to me. But the bottom line is that by August 2001, C&S owned 201 shares of Superior, while Jerry Greenland and Brice Hayes together owned 199, giving the C&S members a slight majority ownership. *Id.*, ¶ 21. The Agreement also gave C&S the ability to nominate two of the three Superior directors. *Id.*, ¶ 22

In April and July of 2003, C&S and its members – Stamper, Dotson, Combs and the Combs Trust – along with the Superior Board of Directors, caused Superior to execute promissory notes for $500,000 and $700,000 (the "Notes") as well as to provide C&S a security interest in all of Superior's property to secure payment on the Notes. *Id.* at 24-25. The execution

2

of these Notes caused Superior to convert a previously unsecured line of credit into a secured debt. *Id.*, ¶¶ 16, 26. At the same time, several individuals executed both personal guaranties and real estate mortgages to back the money owed to C&S as provided for by the Notes. *Id.*, ¶¶ 27, 30. These individuals – who I will refer to in this opinion as the Counterplaintiffs – included Brice Hayes, Brian Hayes and his wife Robin Hayes, and Danny Greenland and his wife Cathy Greenland. *Id.*, ¶ 27.

Neither Cathy Greenland nor Robin Hayes have any interest in Superior but they were asked to sign the mortgages, presumably because their names were on the deeds to the homes securing the mortgages. *Id.*, ¶ 28. The Counterplaintiffs allege a number of things as it relates to the execution of these mortgages. But as it relates to the two spouses – Cathy and Robin – they claim that C&S violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, by not inquiring as to the creditworthiness of Brian Hayes or Danny Greenland individually before insisting that their spouses sign on as well. *Id.*, ¶¶ 27, 29.

Relative to the fraud claim, the Counterplaintiffs allege that three or four days prior to the signing of the Guaranties and Mortgages, C&S member George Stamper had a telephone conversation with Brice and Brian Hayes. In that conversation Stamper told them that they didn't have to worry about executing the Guaranties and Mortgages because C&S would never act upon them or seek to foreclose on the Mortgages. Stamper persuaded them that the Mortgages were a mere formality and in essence they were nullities used solely for the purpose of "papering the transaction." *Id.*, ¶¶ 31, 32.

The underlying action in this Court began as an effort by C&S to collect on these Notes, Guaranties, and Mortgages from Superior, Danny Greenland, Cathy Greenland, Brian Hayes,

3

Robin Hayes, Brice Hayes, and several banks. *See* Amended Complaint [DE 17]. Perhaps believing that the best defense is a good offense, Counterplaintiffs came back swinging with a Counterclaim against C&S alleging fraud and a host of other things. They also filed a Third Party Complaint against the members of C&S – Stamper, Dotson, and Combs – making similar allegations. *See* Counterclaim [DE 26]; Third Party Complaint [DE 27]. For simplicity sake, those listed as defendants in the Third Party Complaint, along with C&S, who is listed in the Counterclaim, will be referred to in this opinion collectively as "Counterdefendants."

Counterplaintiffs say that after gaining control of Superior, the Counterdefendants proceeded to run it into the ground. They caused Superior to purchase $1.4 million of steel inventory when they should have used the money to pay creditors, like C&S, and proceed with new orders. *Id*., ¶ 35. They rejected an offer, arranged by Brice Hayes and other minority shareholders, to purchase Superior's assets for $1.6 million. *Id*., ¶ 36. Their decisions led to the conversion of amounts owed by Superior pursuant to conditional sales agreements into amounts owed on the Notes, but failed to transfer title or ownership of the real estate to Superior. *Id*., ¶ 39. Lastly, Superior has failed to pay commissions owed to Danny Greenland and Brian Hayes, and has ignored a demand by Brice Hayes to perform an accounting of Superior's financial condition. *Id*., ¶¶ 40, 41. Superior is now worthless. *Id*., ¶ 37. C&S is still in control of Superior, and Superior has not filed an appearance to defend against C&S's complaint.

## DISCUSSION

The minimum requirements for pleading a claim for relief are contained in Rule 8. That Rule requires, in pertinent part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Rule 12(b)(6), on the other hand, authorizes the

dismissal of a complaint if it fails to state a claim upon which relief can be granted.

Last year the Supreme Court retooled its interpretation of the pleading standards in the context of a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Prior to *Bell Atlantic* the standard had basically remained static for nearly fifty years. In *Bell Atlantic*, the Court stated that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (brackets omitted). Instead, the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. In so holding, *Bell Atlantic* retired the oft-quoted statement from *Conley v. Gibson*, 355 U.S. 41 (1957), that a complaint survives a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic*, 127 S.Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). *See also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008); *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008).[1]

The Seventh Circuit has cautioned courts not to "overread" *Bell Atlantic*. *See Limestone*, 520 F.3d at 803. *See also Tamayo*, 526 F.3d at 1082. *Bell Atlantic* essentially "impose[s] two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*. (quotation marks and

---

[1] Neither party cites *Bell Atlantic*. Instead both sides continue to quote *Conley v. Gibson*, 335 U.S. 41 (1957) and its progeny as the controlling standard governing motions to dismiss, which it is not. *See* Counterplaintiff's Consolidated Response [DE 38] at 13; Mot. to Dismiss Counterclaim [DE 37] at 2; Mot. to Dismiss Third Party Complaint [DE 35] at 2.

ellipses omitted). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id*. (quotation marks omitted).

**A.    Actual Fraud**

Several of the claims challenged by Counterdefendants in their Motions to Dismiss are based in fraud. Count IV of both the Counterclaim and Third Party Complaint charge actual fraud against C&S and Stamper respectively for the misrepresentations of Stamper concerning the validity and enforcement of the Guaranties and Mortgages obtained from the Counterplaintiffs. The elements of fraud in Indiana are (1) a material representation of a past or existing fact which was untrue; (2) knowledge of falsity or recklessness; (3) reliance; and (4) resulting damages. *American United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 694 (Ind. Ct. App. 2004).

There are two relevant aspects of Stamper's statements. First, the statements that C&S would never attempt to enforce the Guaranties and Mortgages is a promise of future action. This clearly does not trigger fraud liability due to the oft-repeated principle in Indiana law that actual fraud may not be based on representations of future conduct, broken promises, or representations of existing intent that are not executed. *See American Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008); *Bilimoria Computer Systems, LLC v. America Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App.2005); *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004); *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind. Ct. App. 2000).

But beyond that promise, Counterplaintiffs also allege Stamper stated that the Guaranties and Mortgages were only necessary for "papering the transaction." Counterdefendants argue that they were merely making a "statement of purpose." Nevertheless, a trier of fact could plausibly

6

interpret this portion of Stamper's statement to be a description of conditions at the time the statement was made, i.e. explaining the documents' enforceability at the moment they were signed, regardless of any intent to enforce them in the future if possible. The determination as to which interpretation is correct is not appropriate at the motion to dismiss stage, where I must construe all allegations in the light most favorable to Counterplaintiffs. *Tamayo v. Blogjeich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

That said, even if Counterplaintiffs' have the correct interpretation of Stamper's statement, they still may have trouble establishing fraud. In general, a misstatement of law is not actionable for fraud in Indiana, because everyone is presumed to know the law and therefore, the supposedly defrauded party cannot justifiably have relied on the misstatements. *American United Life Ins. Co.,* 808 N.E.2d at 703-04. There are, however, four exceptions to this general rule. These include misrepresentations of law consisting of express or implied misrepresentations of fact, *see Bowman v. City of Indianapolis*, 133 F.3d 513, 519 (7th Cir. 1998); *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 319-20 (Ind. Ct. App. 1991); where the individual making the misrepresentation of law is an attorney or claims some special legal knowledge, thereby inducing reliance, see *id.* at 319 (citing *Kinney v. Dodge,* 101 Ind. 573, 576 (1885)); where the misrepresentation concerns the law of a foreign jurisdiction, *see Scott,* 571 N.E. 2d at 319 (citing *Travelers Ins. Co. v. Eviston,* 37 N.E.2d 310, 316-17 (1941)); and for situations in which there is a special relationship of trust and confidence between the parties, *see Bowman*, 133 F.3d at 519; *Peoples Trust Bank v. Braun*, 443 N.E.2d 875, 879 (Ind.Ct.App.1983).

The first three exceptions are not applicable. There is no fact imbedded in the representation that the agreements were not enforceable. *C.f., Scott*, 571 N.E.2d at 320 (noting

7

that misrepresentations at issue dealt with not just the legal tax consequences of proposed plan, but the fact-based form and structure of the plan as well.) Furthermore, none of the allegations state that Counterdefendants held themselves out to be experts on Guarantees and Mortgages. *C.f., id.* (refusing to dismiss claim where defendants held themselves out as experts in tax planning). And no foreign law is implicated by the complaint.

There is enough alleged in the pleadings, however, to support a finding of a special relationship of trust and confidence between the parties. A confidential relationship is found when the specific facts show that one party has superiority, influence, or inequality over a dependent or weak party. *Bowman*, 133 F.3d at 519. (citing *Hunter v. Hunter,* 283 N.E.2d 775, 779 (1972). "[I]t can be generally stated that a confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Peoples Trust Bank*, 443 N.E.2d at 879 (quoting *Hunter*, 283 N.E. 2d at 779). It must also be shown that the dominant party abused the confidence by improperly influencing the weaker party to obtain an unconscionable advantage. *Id*. The existence of such a relationship is generally a question of fact. *See Dawson v. Hummer*, 649 N.E.2d 653, 661 (Ind. Ct. App. 1995).

Counterplaintiffs allege that after the Superior company was formed in 1997, the C&S members gradually obtained 51% of its ownership, grabbed control of two thirds of its director positions, and took over all operational and financial decisions of the company. Counterclaim, DE 26, ¶¶ 15-23; Third Party Complaint, DE 27, ¶¶ 15-23. Typically, a confidential relationship exists "where there is a blood, marital or fiduciary relationship." *Grow v. Indiana Retired Teachers Community*, 271 N.E.2d 140, 143 (Ind. Ct. App. 1971). The Counterclaim and Third Party Complaint state that the Counterdefendants held a fiduciary duty towards Counterplaintiffs

8

as directors and controlling shareholders of Superior. Whether or not a confidential relationship existed is a factual question. "A judge reviewing a motion to dismiss under Rule 12(b)(6) cannot engage in fact-finding." *In re Consolidated Industries*, 360 F.3d 712, 717 (7th Cir. 2004).

Counterplaintiffs also allege that Counterdefendants intentionally made the misrepresentations to cause Counterplaintiffs to execute the Guaranties and Mortgages to both the Counterplaintiffs' detriment and the Counterdefendants' gain. Counterclaim, DE 26, ¶¶ 63-64; Third Party Complaint, DE 27, ¶¶ 62-63. Giving Counterplaintiffs the benefit of every reasonable inference from their allegations, *see Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003), this is enough, if true, for a trier of fact to find an improper influence by a dominant party to obtain an "unconscionable advantage" from a weaker party. Hence, Counterplaintiffs have plead enough to fit the exception to the rule prohibiting fraud claims based on misstatements of law. Their claim based on Stamper's misstatements about the need to paper the transaction will therefore remain pending.

**B.    Constructive Fraud**

In Count III of both pleadings, Counterplaintiffs assert a constructive fraud claim. They allege the Counterdefendants abused their confidence by engaging in self-dealing and causing Superior to be grossly mismanaged, as well as for failing in their duty to disclose that they were not acting in the best interest of Superior. Brice Hayes tacks on another claim of constructive fraud in Count VIII of the Counterclaim and VII of the Third Party Complaint, alleging that Counterdefendants had a duty to disclose that the Guaranties were valid and enforceable, and that they abused his confidence for their own gain by fraudulently procuring the Guaranties.

A proper claim for constructive fraud consists of: 1) a duty existing by virtue of the

9

relationship between the parties; 2) representations or omissions made in violation of that duty; 3) reliance thereon by the complainant; 4) injury to the complainant as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complainant. *American United Life Ins. Co.* 808 N.E.2d at 694. A claim for constructive fraud may be based on silence when there is otherwise a duty to speak. Like actual fraud, statements of opinion are not actionable for constructive fraud. *Shriner v. Sheehan*, 773 N.E.2d 833, 849 (Ind. Ct. App. 2002).

Counterplaintiffs point to several acts taken by Counterdefendants which arguably may not have been done in Superior's best interests, such as: converting real estate into amounts owed on the outstanding Notes but failing to transfer title; carrying an overly-heavy surplus of steel inventory; refusing to pay other creditors; and allowing orders to go unfulfilled. The charge that Counterdefendants should have disclosed they were not working in Superior's "best interest" is a demand that Counterdefendants should have agreed with Plaintiff's own opinion and assessments as to the consequences of those various actions. This is not a fact but a conclusory legal opinion. *See id*. (finding statement by majority shareholder that it was in minority shareholder's "long-term interest" to sell shares was an opinion and not actionable for constructive fraud.); *Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 582 (Ind. Ct. App. 1999)(finding insurance agent's representation to insured that he would not benefit from hiring an attorney for purposes of settlement was a non-actionable opinion). Therefore, the portion of the constructive fraud claims based on Counterdefendants' failure to acknowledge that opinion is dismissed.

In contrast, Brice Hayes' allegations in Count VIII of the Counterclaim and Count VII of the Third Party Complaint do not suffer from a similar infirmity. He alleges that

Counterdefendants engaged in constructive fraud by failing to disclose that the Guaranties were valid and enforceable. This is a seemingly mirror-image of the actual fraud claim which alleged that Counterdefendants misled Counterplaintiffs by explicitly stating that the documents were *not* enforceable. Regardless of the apparent redundancy with the earlier claim, it does comport with Rule 9(b) by putting Counterdefendants on notice as to a specific omission of fact, as well as the circumstances surrounding the omission. In addition, unlike claims for actual fraud, representations as to future conduct may be actionable as constructive fraud. *Yeager v. McManama*, 874 N.E.2d 629, 637 (Ind. Ct. App. 2007); *Orem v. Ivy Tech State College*, 711 N.E.2d 864, 869 n.5 (Ind. Ct. App. 1999). This portion of Brice Hayes' claims survive the Motions to Dismiss.

**C.    Civil Conspiracy**

In Count VI of their Third Party Complaint, Counterplaintiffs claim that the Counterdefendants – Stamper, Dotson, Eloise Combs and the Combs Trust – conspired to defraud the Counterplaintiffs into signing the Guaranties and to abuse the trust and confidence of Brice Hayes as a shareholder of Superior. In Indiana, a civil conspiracy is defined as "a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Huntington Mortgage Co. v. DeBrota,* 703 N.E.2d 160, 168 (Ind.Ct.App.1998). The heightened specificity requirements of Rule 9(b) extends to any claim premised upon a course of fraudulent conduct, including charges of civil conspiracy to defraud. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507-09 (7th Cir. 2007). In a case with multiple defendants, Rule 9(b) requires the plaintiff's pleadings to "inform each defendant of the nature of his alleged participation in the

fraud." *Vicom, Inc., v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)(quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). "A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)(quoting *Design Time Inc. v. Synthetic Diamond Technology, Inc.*, 674 F.Supp. 1564, 1569 (N.D. Ind. 1987)).

Other than describing the misrepresentation of Stamper, Counterplaintiffs make only the most general allegations regarding the other Counterdefendants and their roles in the conspiracy. The charges essentially amount to nothing more than the statement that, "[u]pon information and belief, the Controlling Shareholders discussed, and acted in concert to effect, the fraudulent procurement of the Guaranties and Mortgages." Third Party Complaint [DE 27], ¶ 34. There is no claim that the other Counterdefendants made any misrepresentations themselves. This kind of generic allegation does not meet the Rule 9(b) standard. *See Oak Street Mortgage, LLC v. Fundz R Us, Inc.*, 2007 WL 1970890, at * 7 (N.D. Ind. July 2, 2007)(dismissing RICO, fraud and civil conspiracy fraud claims brought by mortgage underwriter against property management company when fraudulent statements were only attributed to a separate appraiser defendant). "[W]hen the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).

Counterplaintiffs have listed in their Third Party Complaint the various ways in which they believe the group of individual Counterdefendants, through C&S, took actions that were detrimental to Superior. Third Party Complaint [DE 27], ¶¶ 23-40. But the only fraudulent act

alleged is the misstatement by Stamper. *Id*., ¶¶ 31-34. While these other acts have bearing on Counterplaintiffs' breach of fiduciary duty and other non-fraud claims, Counterplaintiffs do not link them in any way to Stamper's misstatements other than the one general statement that the C&S shareholders in control of Superior "acted in concert" to procure the documents.[2] *Id*., ¶ 34. Moreover, this one general allegation is made "upon information and belief," and such statements are insufficient to meet the specificity requirements of a fraud claim if the plaintiff making them does not state the grounds for his suspicions. *See Uni*Quality*, *Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992).

D.   **Criminal Mischief**

Count VI of the Counterclaim and Count V of the Third Party Complaint claim that C&S and Stamper are liable for criminal mischief under Indiana law for knowingly and purposefully causing Counterplaintiffs to suffer pecuniary loss through the deception used in obtaining the Guaranties and Mortgages. Indiana makes it a crime for a person to "knowingly or intentionally cause[] another to suffer pecuniary loss by deception . . ." IND. CODE § 34-43-1-2, and the victim of criminal mischief may bring a civil action for treble damages. IND. CODE § 34-24-3-1. Criminal conviction is not a precondition to recovery in a civil action brought under the crime victim's relief act. *American Heritage*, 879 N.E.2d at 1116. All elements of the crime must be

---

[2]The fact that I find Counterplaintiffs' pleadings are too generalized to maintain a conspiracy claim does not affect their actual fraud claim, addressed earlier. That claim is asserted against Stamper and C&S only. C&S does not dispute that Stamper's statements may be imputed to C&S, a limited liability company. Nor could it, since the misstatements of a company's agents are generally attributable to that company. *American Heritage*, 879 N.E.2d at 1116-17; *Mid-Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906, 909-910 (Ind. Ct. App.1999). While those misstatements may form the basis of the actual fraud claim, more is needed to show multiple individuals acting in a conspiracy.

13

proven by a preponderance of evidence.  *Gilliana v. Paniaguas*, 708 N.E.2d 895, 900 (Ind. Ct. App. 1999).

The parties disagree as to whether "deception," as used in the criminal mischief statute, means the requirements of fraud must be met in order to state a claim.  *Compare ABN Amro Mortg. Group, Inc. v. Maximum Mortg., Inc.*, 429 F.Supp.2d 1031, 1041 (N.D. Ind.) (finding that the deception action under the criminal mischief statute "sounds in fraud" and so is subject to the specificity requirements of Rule 9(b)) *with American Heritage*, 879 N.E.2d at 1117-18 (choosing not to read elements of common law fraud into other crimes defined by statute, including criminal mischief).  However, because I have already determined that Counterplaintiffs have met the pleading requirements for their fraud and constructive fraud claims, there is no need to resolve that dispute, as they have properly met the heightened pleading standards.

C&S and Stamper also say that "typical" acts of criminal mischief include arson, vandalism, and personal altercations, implying that the sort of white collar act they stand accused of does not fit within the statute's scope.  Mot. to Dismiss Counterclaim [DE 37] at 6-7; Mot. to Dismiss Third Party Complaint [DE 35] at 7.  But they acknowledge that acts of deception can also constitute a crime under the statute, albeit only in the rare case.  *Id*.  I cannot simply read the deception clause out of the statute, even if it is not the prototypical behavior triggering its enforcement.  *ABN Amro* provides a clear example of the criminal mischief statute being used in a similar vein, when the court refused to dismiss a claim by a mortgage lender that a home vendor deceived it into making a series of unwise mortgage loans. 429 F.Supp.2d at 1044.  Accordingly, the Counterplaintiffs' claim of criminal mischief will not be dismissed.

**E.     Equal Credit Opportunity Act**

Counterdefendants also seek the dismissal of Count VII of the Counterclaim, which alleges a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. ECOA prohibits a creditor from requiring the signature of a credit applicant's spouse on a credit instrument without first determining whether the applicant is independently qualified. *Id*.; 12 C.F.R. § 202.7(d). Counterdefendants challenge whether they are "creditors" for purposes of ECOA. A "creditor" is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit...." § 1691a(e). Counterdefendants insist that C&S is a closely held corporation that does not "regularly" extend credit, and that there is nothing in the counterclaim alleging otherwise.

Counterdefendants may well be correct but they raise questions that are not appropriate for resolution by a motion to dismiss. Even the opinion they cite for the proposition that ECOA excludes non-institutional creditors, *Riethman v. Berry*, 113 F.Supp. 2d 765, 769 (E.D. Pa. 2000), was a ruling on summary judgment. Here, Counterdefendants are made well aware of the nature of Plaintiff's ECOA claim. They allege that the spouses of Danny Greenland and Brian Hayes were made to execute the Guaranties and Mortgages, but that Counterdefendants failed to first determine the creditworthiness of the husbands. It is true that Counterplaintiffs did not state in their counterclaim that "C&S is a creditor as defined by ECOA," but the federal rules of pleading do not create such formalistic tests. Whether C&S fits the definition of creditor is a factual question. *See accord*, *Stegvilas v. Evergreen Motors, Inc.*, 2007 WL 1438372, at * 3 (N.D. Ill. May 11, 2007); *Nevarez v. O'Connor Chevrolet, Inc.*, 2005 WL 675824, at * 4 (N.D. Ill March 21, 2005). The Counterclaim has more than adequately notified both parties that the issue is in play and raised the right to relief under ECOA above the speculative level. *See Twombly*, 127

15

S.Ct. at 1965.

**F.      Declaratory Judgment**

Plaintiff Brice Hayes seeks, in Count V of the Counterclaim, a declaratory judgment that the Sale Agreement is null and void because the "indirect benefit" referenced in the Sale Agreement does not constitute sufficient consideration.[3] Additionally, in Count II of the Counterclaim and the Third Party Complaint the Counterplaintiffs seek a declaratory judgment that it is in Superior's best interest to hire independent counsel to defend against the claims asserted by C&S and to prevent default. Both parties present their arguments as if it were controlled by the Indiana Declaratory Judgments Act. *See* Ind. Code 34-14-1-1 *et seq*. But a court sitting in diversity is compelled to use federal procedural law. *Musser v. Gentiva Health Services*, 356 F.3d 751, 754 (7th Cir. 2004). The federal Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural statute, as is the Indiana Declaratory Judgment Act, and so federal law controls. *Inst. For Study Abroad, Inc. v. Int'l. Studies Abroad, Inc.*, 263 F.Supp.2d 1154, 1156-57 (S.D. Ind. 2001) (citing *Bourazak v. N. River Ins. Co*, 379 F.2d 530, 533 (7th Cir. 1967)). The federal Declaratory Judgment Act provides:

In a case of actual controversy within its jurisdiction, [with certain exceptions], any

---

[3]Brice Hayes also seeks a declaration that, if the sale agreement is void, he would have a 50% ownership interest in Superior. This additional request is confusing. The pleadings state that prior to the Sale Agreement, Hayes owned 150 of the 400 shares, and that after the Sale agreement he owned 99 of the 400 shares. Counterclaim [DE 26], ¶¶ 18, 21. With the transfer of the one share to C&S members nullified, Hayes would still only own 100 shares, or 25% of the Superior stock. I assume Counterplaintiffs get to 50% by combining the shares owned by Hayes with those of Jerry Greenland, who owns 100 shares. Jerry Greenland is not even a party in this action, and there is no explanation of his relationship to Danny and Cathy Greenland. Since neither party addressed this issue, I will limit my decision to the first portion of the declaratory judgment request and let the parties sort out amongst themselves how they wish to align their individual stakes after the dispute is ultimately resolved.

> court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

I will first address Count V of the Counterclaim concerning the alleged lack of consideration for the Sale Agreement. Counterplaintiff Brice Hayes has sufficiently alleged an actual controversy between himself and Counterdefendants. The Seventh Circuit has acknowledged that the distinction between an Article III "controversy" on the one hand and an "abstract question of law" on the other, is one of degree. *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008)(citing *Deveraux v. City of Chicago*, 14 F.3d 328, 330-31 (7th Cir. 1994). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) (quoting *Maryland Casualty Co., v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Hayes alleges that the transfer of stock provided for in the Sale Agreement wrested control of Superior into the hands of C&S, that the transfer is actually void for failure of consideration, and that without a re-allocation of shares to the pre-Agreement conditions, C&S will allow Superior to default in this lawsuit. Counterclaim [DE 26], ¶¶ 42, 67-68. The enforceability of a contract is an appropriate dispute to resolve through declaratory judgment. *See Kim v. Riscuity, Inc.,* 2006 WL 2192121, at * 2 (N.D. Ill July 31, 2006)(permitting plaintiff to pursue declaratory judgment claim that gym membership contracts were void and that debt

collector had no right to continue efforts to collect amounts owing based on those contracts); *Cummins v. Bickel & Brewer*, 2002 WL 187492, at *3 (N.D. Ill Feb. 6, 2002)(voiding, through declaratory judgment, a forfeiture provision found in a law firm's partnership agreement); *Roberge v. Qualitek Intern., Inc.*, 2002 WL 109360, at * 7 (N.D. Ill Jan 28, 2002)(granting declaratory relief that covenant not to compete was void and unenforceable where potential new employer refused to hire plaintiff without resolution of issue with former employer); *Walter v. Balogh*, 619 N.E.2d 566, 569 (Ind. 1993)(declaring void a restructuring of previous inter vivos gift of land because of failure of consideration).

Brice Hayes does not have to be handcuffed to an invalid contract while C&S uses that same contract to prevent his company from mounting a defense in C&S's suit. "One does not have to await the consummation of threatened injury to obtain preventative relief." *See Pacific Gas & Elec. Co. v. State Energy Resource Conservation & Dev. Comm'n,* 461 U.S. 190, 201 (1983). Superior has undeniably failed to answer or respond in any way to the underlying complaint brought against it, and no attorney has made an appearance on its behalf. The danger of default and subsequent injury to Superior is real and immediate, and the contractual provision in question bears directly on whether that default will be permitted to occur. It makes little sense to allow the C&S suit to reach its completion without a resolution of the contractual dispute and without representation for Superior, only to later determine that Hayes had the correct interpretation to begin with. The injury is no mere hypothetical, since the litigation is already in motion. The parties certainly have adverse legal interests, as they are on opposite sides of the original underlying suit brought by C&S.

Count II of the Counterclaim and Third Party Complaint, on the other hand, does not

present a dispute appropriate for declaratory relief. Counterplaintiffs seek a declaration that it is in Superior's "best interest" to hire independent representation in this action. The claim is redundant with Count I, which seeks damages for Counterdefendants' breach of fiduciary duties. Count I is not challenged in the Motions to Dismiss. It incorporates allegations of wrongful conduct outlined in a March 4, 2008 letter sent by Hayes' to C&S, including the failure to hire representation for Superior and putting them at risk for default. *See* Counterclaim, Ex. F [DE 26-7], at 3-4; Third Party Complaint, Ex. F [DE 27-7], at 3-4. "While the availability of another remedy does not preclude declaratory relief, a court may properly decline to assume jurisdiction in a declaratory action when the other remedy would be more effective or appropriate." *City of Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975); *see also*, *NUCOR Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 579 (7th Cir.1994)(asking "whether there is an alternative remedy that is better or more effective" as a consideration to determine appropriateness of declaratory relief.) For Counterplaintiffs, another remedy is not only available, but is actively being pursued in the same action. *See* e.g., *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F.Supp. 713, 717 (S.D. Ind. 1991)(dismissing claim for declaratory judgment that defendants breached purchase agreement when plaintiffs also brought breach of contract claim for damages).

I also believe that the question of "best interest" is too abstract to address in a declaratory judgment context. Unlike Brice Hayes' claim, there is no isolated contractual dispute to bring the "best interest" controversy into focus. Count II requires the reliance of hypotheticals as to future consequences. The better lens to examine this issue is provided by the more straightforward breach of fiduciary duties claim raised in Count I.

## CONCLUSION

For the foregoing reasons, the Counterdefendants' Motions to Dismiss [DE 34; DE 36] are **GRANTED IN PART** and **DENIED IN PART** as follows:

- Count IV of both the Counterclaim and Third Party Complaint (Actual Fraud) remains pending;

- Count III of both the Counterclaim and Third Party Complaint (Constructive Fraud) is dismissed;

- Count VIII of the Counterclaim and VII of the Third Party Complaint (Constructive Fraud Claim of Brice Hayes) remains pending;

- Count VI of the Third Party Complaint (Civil Conspiracy) is dismissed;

- Count VI of the Counterclaim and Count V of the Third Party Complaint (Criminal Mischief) remains pending;

- Count VII of the Counterclaim (ECOA) remains pending;

- Count V of the Counterclaim (Declaratory Judgment Claim Regarding Sale Agreement) remains pending; and

- Count II of both the Counterclaim and Third Party Complaint (Declaratory Judgment Claim Regarding Hiring Of Independent Counsel) is dismissed.

All counts dismissed are done so without prejudice. Counterplaintiffs are free to replead but are advised to do so only if amended pleadings can be fashioned in a manner consistent with this opinion as well as the rules of civil procedure.

**SO ORDERED.**

ENTERED: December 12, 2008

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
